# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

David M. Neal,

    Petitioner,

v.

Kamala Harris, *et al.*,

    Respondents.

Case No. 1:20cv840

Judge Michael R. Barrett

## OPINION AND ORDER

This matter is before the Court on the Joint Motion to Dismiss filed by Respondents Kamala Harris, Joe Biden, Tom Perez, the Ohio Democratic Party, and the Warren County Ohio Democratic Party. (Doc. 7). Petitioner[1] David Neal, proceeding *pro se*, filed a Response in Opposition. (Doc. 9).

## I. BACKGROUND

On August 18, 2020, Respondent Harris accepted the Democratic Party's nomination for Vice President of the United States for the November 3, 2020 General Election. (Doc. 7-1 PageID 312). On September 2, 2020, the Ohio Secretary of State certified Respondent Harris as the Democratic candidate for Vice President, along with Respondent Biden as the Democratic candidate for President. (Doc. 2-1 PageID 287)

---

[1] The Court construes the filing as a Petition for a Writ of Mandamus. Although styled as a "Motion for Temporary Injunctive Order to Receive Credentials" (Doc. 2 PageID 157), Mr. Neal requests "a writ of mandamus" from the Court (*id.* PageID 157, 163, 165), and subsequently clarifies that he does not seek a temporary restraining order (Doc. 9 PageID 341) (Petitioner "submits that there was no request for a restraining order . . ."). *Cf.* 28 U.S.C. § 1651 (the All Writs Statute); *State ex rel. Skaggs v. Brunner*, 588 F. Supp. 2d 828, 833 (S.D. Ohio 2008) ("Although Federal Rule of Civil Procedure 81(b) 'abolished' the writ of mandamus, the All Writs Statute, 28 U.S.C. § 1651, empowers federal courts to 'issue all writs in aid of their respective jurisdictions, including writs in the nature of mandamus.'" (quoting *Haggard v. Tennessee*, 421 F.2d 1384, 1385 (6th Cir. 1970))).

(citing DIRECTIVE 2020-19: CERTIFIED CANDIDATES FOR PRESIDENT AND VICE PRESIDENT OF THE UNITED STATES, https://www.ohiosos.gov/globalassets/elections/directives/2020/dir2020-19.pdf (last visited Nov. 13, 2020)).[2]

Petitioner filed his Petition for Writ of Mandamus in the Court of Common Pleas in Warren County, Ohio, on September 23, 2020. (Doc. 2). In his request for relief, Petitioner asked that court to:

> Grant injunctive relief in the form of a writ of mandamus requiring the Democratic National Committee and Vice-Presidential candidate Kamala Harris immediately explain exactly how they think, by law, a 14th Amendment citizen known as an anchor baby, born to two foreign parents whose allegiance is to the countries they come from, in this case, Jamaica and India, is a natural born citizen. Since her place of birth and birth date are known then all that is necessary to remedy this problem is to have the dates of her parents naturalization. If both parents were not naturalized at the time of her birth then she is not eligible for office. If not satisfactorily explained according to the historical meaning of the term, born to American citizen parents, which was re-established in the US Senate as recently as April of 2008 then we wish to have her name removed from the Democratic ballot at least in the state of Ohio. If found to be deficient in her qualifications then we wish the Democratic National Committee to declare the candidate as not certified as she is not a valid candidate for the office of Vice-President of the United States of America Under the United States Constitution, Article II, Section 1 Cl. 5.

(Doc. 2 PageID 166). On October 27, 2020, Respondents Harris and Biden removed the matter to this Court on the basis of federal question jurisdiction, as Petitioner's main argument is that a writ of mandamus is necessary to order Respondents to remove Respondent Harris' name from the Ohio ballot for the November 3, 2020 General Election, or to remove her from being Vice President should she and Respondent Biden

---

[2] The copy of the Ohio Secretary of State's September 2, 2020 Directive, found on the Ohio Secretary of State's website, is self-authenticating under FED. R. EVID. 902, and the Court may take judicial notice of it. *See e.g.*, *Oak Ridge Envtl. Peace All. v. Perry*, 412 F. Supp. 3d 786, 810 (E.D. Tenn. 2019) (citing *Demis v. Sniezek*, 558 F.3d 508, 513 n. 2 (6th Cir. 2009) (taking notice of government website)).

win the General Election as she is not a valid candidate for the office of Vice President of the United States under the United States Constitution. (Doc. 1 PageID 2) (referring to (Doc. 2)).

On October 28, 2020, the Court held a telephone status conference with the parties during which Respondents stated their intention to file a joint motion to dismiss on October 30, 2020. Petitioner requested seven days to file a response, and the Court informed the parties that it would rule on Respondents' motion after it received Petitioner's response thereto.

Pursuant to Federal Rule of Civil Procedure 12, Respondents move to dismiss this action on the grounds that Petitioner lacks standing to bring this action; fails to meet the threshold requirements for relief in the nature of mandamus; and his arguments fail as matter of constitutional law. (Doc. 7). In response,[3] Petitioner does not challenge Respondents' removal of this matter; asserts that he has standing; and contends that the Petition states a valid request for relief. *Id.*

## II. ANALYSIS

The Court must determine whether Petitioner has standing to raise his constitutional arguments before it can address the merits of those arguments. *See City of Heath, Ohio v. Ashland Oil, Inc.*, 834 F.Supp. 971, 975 (S.D. Ohio 1993); *accord Moir v. Greater Cleveland Trans. Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946) ("The Court will consider the 12(b)(1) motion first, as the

---

[3] Although Petitioner styled this filing as an "Amendment to the Original Complaint and Memorandum to Support Plaintiff's Motion to Oppose Defendants Motion to Dismiss," the filing does not contain any argument or analysis that the Court can liberally construe as moving for leave to amend his Petition. *See Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam) (explaining that *pro se* pleadings are to be liberally construed and held to less stringent standards than formal pleadings drafted by attorneys).

3

12(b)(6) challenge becomes moot if subject matter jurisdiction is lacking.")). Article III's standing requirement is a threshold, jurisdictional, and constitutional prerequisite that the Court cannot ignore. *Compare* (Doc. 2 PageID 162), *and* (Doc. 9 PageID 340), *with Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.") (citation omitted).

"Standing stems from the Constitution's mandate that federal courts may decide only 'Cases' or 'Controversies.'" *Vonderhaar v. Vill. of Evendale, Ohio*, 906 F.3d 397, 400-01 (6th Cir. 2018) (citing U.S. CONST. art. III, § 2, cl. 1). Article III standing requires a petitioner to establish three things: a concrete and particularized injury, actual or imminent ("injury-in-fact"), traceable to the defendant ("causation"), and proof that a favorable outcome would redress the harm ("redressability"). *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). With respect to the first element, a petitioner's injury must be "real" and affect him in some "personal and individual way." *Lujan*, 504 U.S. at 560; *Brintley v. Aeroquip Credit Union*, 936 F.3d 489, 491-92 (6th Cir. 2019).

Petitioner asserts that he meets all three standing elements. (Doc. 9 PageID 339). However, asserting that one meets the standing elements does not make it so, and the Court finds that Petitioner lacks standing. He has not established that he suffered an injury that is particular to him. He does not explain how he has experienced, or will experience, an injury from Respondents' alleged conduct in a way that is distinct from any other member of the public. Rather than asserting a sufficient concrete and particularized injury, he asserts insufficient generalized grievances. *See, e.g.*, (Doc. 2 PageID 167) (Petitioner

4

"submits that by polluting our elections with ineligible candidates, [his] civil and civic rights, as guaranteed in the constitution, as well as the civil and civic rights of all Americans are weakened and polluted."); (Doc. 9 PageID 358) (Petitioner's assertion that "citizens like him should always have standing to mount fundamental constitutional challenges to the political class."); *see also Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013) ("[A] 'generalized grievance,' no matter how sincere, is insufficient to confer standing."); *Lujan*, 504 U.S. at 573-74 ("[A] plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy."); *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction.") (citation omitted); *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923) ("The party who invokes [judicial] power must be able to show . . . that he has sustained or is immediately in danger of sustaining some direct injury . . . and not merely that he suffers in some indefinite way in common with people generally."); *accord Annamarie ? Last Name Uncertain v. Electors for Kentucky,* No. 3:12CV-602-H, 2012 WL 5398565, at *2 (W.D. Ky. Nov. 5, 2012) ("Plaintiff lacks standing to challenge Obama's candidacy and eligibility to be on the ballot as she has suffered no injury particularized to her.").

Petitioner's status as a voter does not confer standing. *See, e.g.*, *Kerchner v. Obama*, 612 F.3d 204, 208 (3d Cir. 2010); *Berg v. Obama*, 586 F.3d 234, 239 (3d Cir. 2009); *Becker v. Fed. Election Comm'n*, 230 F.3d 381, 389-90 (1st Cir. 2000);

*Sibley v. Obama*, 866 F. Supp. 2d 17, 20 (D.D.C. 2012), *aff'd*, No. 12-5198, 2012 WL 6603088 (D.C. Cir. Dec. 6, 2012); *Jones v. Bush*, 122 F. Supp. 2d 713, 717 (N.D. Tex. 2000), *aff'd*, 244 F.3d 134 (5th Cir. 2000); *Hollander v. McCain*, 566 F. Supp. 2d 63, 68 (D.N.H. 2008).

To the extent that Petitioner argues that his fears about an alleged unlawful election establishes an injury-in-fact, any asserted psychological injury in this matter is insufficient to confer standing. *See Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 861 (6th Cir. 2020) (explaining that "the alleged 'psychological consequence presumably produced by observation of conduct with which one disagrees' is 'not an injury sufficient to confer standing under Art. III'" (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 485 (1982))). Additionally, the Court is not convinced by Petitioner's contentions that anarchy, constitutional crises, civil unrest, rioting, burning, violence to person or property, massive property loss, and/or serious loss of life is likely to occur if it does not grant his Petition (Doc. 2), as his contentions are based solely on his speculation of unidentified others' future actions.

In short, Petitioner does not satisfy the injury-in-fact requirement, has not met his burden to demonstrate standing, and may not bring his arguments before this Court consistent with Article III.[4] Thus, the Court will dismiss the Petition without prejudice.

---

[4] The Court notes that, even if Petitioner had established an injury-in-fact (he does not), he also could not establish redressability, as the authority to certify the Ohio ballot, and to add or remove candidates from the ballot, belongs to the Ohio Secretary of State, and Petitioner did not name the Secretary of State as a Respondent. *See* Ohio Rev. Code. § 3505.01(A)(1).

The Court further notes that, even if Petitioner satisfied the requirements for standing (he does not), and the requirements for a writ (a question the Court does not, and need not, reach), his constitutional argument would fail, as he concedes that Respondent Harris was born in Oakland, California. *See United States v. Wong Kim Ark*, 169 U.S. 649, 702 (1898); *accord Tisdale v. Obama*, No. 3:12-CV-00036-JAG, 2012 WL 7856823, at *1 (E.D. Va. Jan. 23, 2012), *aff'd*, 473 F. App'x 203 (4th Cir. 2012) ("It is well settled that those born in the United States are considered natural born citizens."); *Ankeny v. Governor of Indiana*, 916 N.E.2d

*See Thompson v. Love's Travel Stops & Country Stores, Inc.*, 748 F. App'x 6, 11 (6th Cir. 2018) ("[O]ur court has stated on several occasions that dismissal for lack of subject matter jurisdiction should normally be without prejudice."); *Revere v. Wilmington Fin.*, 406 F. App'x 936, 937 (6th Cir. 2011) ("Dismissal for lack of subject-matter jurisdiction should normally be without prejudice, since by definition the court lacks power to reach the merits of the case.").

### III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Respondents' Motion to Dismiss (Doc. 7) is **GRANTED,** the Petition for Writ of Mandamus (Doc. 2) is **DISMISSED** without prejudice, and this matter is **CLOSED** and **TERMINATED** from this Court's active docket.

**IT IS SO ORDERED.**

_/s Michael R. Barrett_____
Michael R. Barrett, Judge
United States District Court

---

678 (Ind. Ct. App. 2009) (explaining that the crux of the plaintiffs' argument is that there is a distinction between a "citizen of the United States," as provided in the Fourteenth Amendment, and a "natural born Citizen," as required for qualification to be President under Article II, and, to the plaintiffs, "the difference involves having [two] parents of U.S. citizenship, owing no foreign allegiance," and holding that, "[b]ased upon the language of Article II, Section 1, Clause [5] and the guidance provided by *Wong Kim Ark*, we conclude that persons born within the borders of the United States are 'natural born Citizens' for Article II, Section 1 purposes, regardless of the citizenship of their parents.").